UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFREY J. FENNELLY, JR., | : | |
|     Plaintiff, | : | PRISONER CASE NO. |
| | : | 3:16-cv-1673 (JCH) |
| v. | : | |
| | : | |
| MARC SHAROH, | : | MARCH 19, 2018 |
|     Defendant. | : | |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (Doc. No. 28)**

The plaintiff, Jeffrey J. Fennelly, Jr. ("Fennelly"), currently incarcerated at Cheshire Correctional Institution in Cheshire, Connecticut, commenced this action by Complaint filed pro se pursuant to section 1983 of title 42 of the United States Code. The defendant is Waterbury Police Officer Marc Sharoh ("Sharoh"). Sharoh has filed a Motion for Summary Judgment, which, for the reasons that follow, is granted in part.

**I. STANDARD OF REVIEW**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; see also Redd v. New York Div. of Parole, 678 F.3d 166, 173–74 (2d Cir. 2012). The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See Wright v. Goord, 554 F.3d 255, 266

(2d Cir. 2009). He must present such evidence as would allow a jury to find in his favor to defeat the motion for summary judgment. See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

The nonmoving party cannot "rely on conclusory allegations or unsubstantiated speculation," but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (citation and internal quotation marks omitted). Although the court is required to read a self-represented party's papers liberally and interpret them to raise the strongest arguments that they suggest, see Willey v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment, Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2001). When reviewing the parties' submissions, the court need consider only admissible evidence. See Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

## II. FACTS[1]

At about 8:30 pm on May 13, 2016, Fennelly entered the Barleycorn Bar and Pub ("the Pub"). See Local Rule 56(a)1 Statement of Facts ("L.R. 56(a)1") (Doc. No. 28-2) at 1 ¶ 1. Before arriving at the Pub, Fennelly had consumed alcoholic beverages, smoked a blunt of marijuana, and sniffed a couple lines of powdered cocaine. He described himself as "pretty messed up." Id. ¶ 2. Fennelly had a cocaine habit. See id. ¶ 3.

Fennelly was at the Pub with his mother, sister, and girlfriend. See id. ¶ 6. At the Pub, Fennelly consumed two bottles of Bud Light and three shots of Jack Fire. He became heavily intoxicated. See id. ¶ 5.

At about 9:00 pm, Fenelly's girlfriend went to the restroom. See id. ¶ 7. When she left the restroom, she immediately left the Pub. Fennelly followed her and saw her get into her car and drive away. See id. ¶ 8. Fennelly re-entered the Pub, but decided to go outside to smoke. In the parking lot, Fennelly began calling his girlfriend's name and asking her to return to bring the others home. See id. ¶ 9. While outside, Fennelly

---

[1] The facts are taken from Sharoh's Local Rule 56(a)1 Statement of Facts and the exhibits he submitted in support of his Motion for Summary Judgment. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement containing separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and 56(a)3.

Although Sharoh informed Fennelly of this requirement (Doc. No. 28-4), Fennelly has not submitted a Local Rule 56(a)2 Statement in the required form. The statement of facts in his Memorandum is merely a recitation of his version of events as alleged in his Amended Complaint and does not include any citations. Accordingly, Sharoh's facts are deemed admitted. See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.")

stumbled and walked backwards into a storefront window. He elbowed the window, suffering a laceration to his right elbow. See id. ¶ 10. Fennelly passed out in the parking lot. See id. ¶ 5.

Shortly after midnight, Waterbury police officers were dispatched to the Pub. The owner had reported a white male kicking out windows near the old bank and hitting a female. See id. ¶ 11. The officers located a white male staggering and holding his right arm. The man matched the owner's description. See id. ¶ 12. The man was later identified as Fennelly. See id. ¶ 13. The officers observed blood over Fennelly's hands, arms, and shirt. See id. ¶ 14. He was intoxicated and told the officers that he had been ejected from the Pub. See id. ¶ 15. Fennelly also stated that he had cut and scraped his arm when he punched out a window because he was angry that he had been ejected from the Pub. See id. ¶ 16.

An ambulance was called to transport Fennelly to the hospital. See id. ¶ 17. The ambulance arrived at the scene at 12:30 am on May 14, 2016. See id. ¶ 18. The ambulance attendants noted that Fennelly had a three centimeter cut on his right elbow, smelled of alcohol, was uncooperative, refused to answer questions, was verbally abusive, and threatened violence toward the police. See id. ¶ 19. The attendants noted no abnormalities of Fennelly's head, face, nose, neck, or eyes. See id. ¶ 20. Their impression was that Fennelly only suffered from a laceration of the right elbow. See id. ¶ 21.

Fennelly was taken to St. Mary's Hospital and was admitted at 12:53 am. See id. ¶¶ 22-23. The admitting diagnosis and triage notes indicate only a laceration to the

right elbow, caused by punching through a window.  See id. ¶¶ 24-25.  Fennelly was agitated.  See id. ¶ 26.  Hospital staff called a code gray, applied leather restraints, and administered medication.  See id.

Brian Morgan, a security officer employed by St. Mary's Hospital, was working in the emergency room on May 14, 2016.  See id. ¶¶ 27-28.  He observed Fennelly talking and swearing loudly when he was brought into the emergency room.  See id. ¶ 29.  At one point, Morgan was called to assist hospital staff and police officers in restraining Fennelly, who appeared to be under the influence of some substance.  See id. ¶ 30.  Along with other security officers and police officers, Morgan used force to apply the hospital restraints to Fennelly so he could be examined by a physician.  See id. ¶¶ 31-32.

Fennelly was intoxicated and belligerent.  See id. ¶ 33.  He was unable to provide any history.  See id.  Informed consent for treatment was deemed waived because Fennelly was clinically intoxicated.  See id. ¶ 35.  Blood tests indicated an alcohol serum level of 292 mg/dl and were positive for cocaine and marijuana.  See id. ¶ 36.  The state legal limit of intoxication is 80 mg/dl.  See id. ¶ 37.

Sharoh was assigned to watch Fennelly at the hospital.  See id. ¶ 39.  Fennelly was taken to Room 10 so his arm could be treated.  See id. ¶ 40.  While waiting for treatment, Fennelly became agitated and demanded to leave the hospital.  See id.  Sharoh told him he could not leave and that he was under arrest.  See id.  Fennelly began yelling and swearing that the police could not hold him at the hospital and claimed the police were violating his rights.  See id. ¶ 41.  Fennelly ignored Sharoh's

direction to remain in the bed, got up, and walked toward the door. See id. ¶ 42.

Sharoh escorted Fennelly back to the bed and onto his back. See id. ¶ 43. Fennelly kicked his legs up and struck Sharoh in the back of the head with his leg irons. See id. Sharoh called for assistance while Fennelly was thrashing on the bed trying to kick Sharoh. See id. ¶ 44. When Fennelly kicked his legs and struck Sharoh in the head with his leg irons a second time, Sharoh used several closed fist strikes to the head and face to prevent Fennelly from further assaulting him and escaping. See id. ¶ 45. Additional police and security officers arrived. See id. ¶ 46. Hospital staff applied four-point restraints and medicated Fennelly. See id.

While hospital staff were applying the restraints, Fennelly began spitting blood from his mouth, hitting Sharoh's pant leg and duty belt. See id. ¶ 47. Sharoh covered Fennelly's mouth with a towel to prevent him from spitting blood at Sharoh and hospital staff. See id. ¶ 48. When the towel was placed over his face, Fennelly began to thrash violently and tried to bite Sharoh. See id. Fennelly was taken to another room to be seen by medical staff. He screamed obscenities until the medication began working. See id. ¶ 49.

Fennelly was charged with assaulting an officer, interfering with an officer, and breach of peace. See id. ¶ 50. Sharoh states that at no time prior to the confrontation in the emergency room did he strike Fennelly in the head, face, or body. See id. ¶ 51. Fennelly filed a complaint with the Waterbury Police Department. See id. ¶ 52. The Internal Affairs Division investigated the complaint. See id. Fennelly's interview during the investigation was recorded and transcribed. See id. ¶¶ 53-54. His statements to

6

the Internal Affairs officers are consistent with the allegations in the Amended Complaint. Fennelly signed a release to enable the Internal Affairs investigators to review medical records related to Fennelly's complaint. See id. ¶ 50. Based on the hospital and ambulance records and Fennelly's interview, the investigators concluded that Fennelly's claim of excessive force did not occur. See id. ¶¶ 52–53.

Although he did not submit the required Local Rule 56(a)2 Statement, Fennelly's Amended Complaint is verified. He states that the confrontation with Sharoh occurred in the Pub parking lot and that Sharoh began punching him in the parking lot while he was unconscious. See Am. Compl., (Doc. No. 14), ¶¶ 11, 16. He also states that Sharoh used his forearm to apply force to Fennelly's neck, preventing him from breathing or yelling. Id., ¶ 13.

### III. ANALYSIS

Fennelly claims that Sharoh violated his Eighth Amendment rights. Id., ¶ 20. Sharoh moves for summary judgment on two grounds. First, he argues that, because Fennelly was not incarcerated at the time of the incident, he cannot state an Eighth Amendment claim. Second, Sharoh contends that the confrontation occurred in the hospital emergency room, not at the time of arrest, and that he used reasonable force as requested by hospital personnel.

   A. Eighth Amendment

Sharoh first moves for summary judgment on any Eighth Amendment claims. The Eighth Amendment affords protection to sentenced prisoners. See Whitley v. Albers, 475 U.S. 312, 318 (1986) (Eighth Amendment protections apply only after

7

conviction). As the use of force occurred prior to and during his arrest, the Eighth Amendment affords Fennelly no protection. Sharoh's Motion for Summary Judgment is granted as a matter of law as to any Eighth Amendment claims.

    B. Excessive Force

Claims that a police officer used excessive force in the course of an arrest or other seizure are considered under the reasonableness standard of the Fourth Amendment. To prevail on an excessive force claim against a police officer, the plaintiff must show that the amount of force used was objectively unreasonable as to either when or how the force was applied, and that, as a result of the use of force, he suffered some compensable injury. See Graham v. Connor, 490 U.S. 386, 396 (1989); Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004). Whether a given quantum of force is excessive depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396–97.

In support of his Motion for Summary Judgment, Sharoh has submitted his own Affidavit as well as Affidavits from Officer James McMasters, Security Officer Brian

8

Morgan, and Lieutenant David Silverio; the ambulance records; portions of Fennelly's May 14, 2016 medical records from St. Mary's Hospital; and, Fennelly's statement to Internal Affairs. Fennelly has submitted only his verified Amended Complaint.

Fennelly must oppose the Motion for Summary Judgment with admissible evidence. Sharoh argues that Fennelly's verified Amended Complaint is not admissible evidence because he was highly intoxicated at the time of the incident. See Mem. of Law in Supp. of Def.'s Rule 56 Mot. for Summ. J. ("Def.'s Mem.") (Doc. No. 28-3) at 8. Sharoh contends that Fennelly's intoxication significantly impaired his ability to observe and remember the events of May 14, 2016, and renders any potential testimony incompetent and, therefore, inadmissible. See id.

A witness' ability to observe and remember events affects his competence to testify. See Tate ex rel. Tate v. Board of Educ. of City Sch. Dist. Of Peekskill, 346 F. Supp. 2d 536, 537–38 (S.D.N.Y. 2004). However, courts considering intoxication of a witness or affiant generally hold that a witness or affiant's intoxication at the time of the event does not preclude admission, but may be used to challenge credibility. See, e.g., Williams v. Jackson, No.17-1345, 2017 WL 7053972, at *3 (6th Cir. Oct. 27, 2017) (noting that effect of affiant's intoxication on his ability to perceive events was issue of credibility); Kong Meng Xiong v. City of Merced, No. 1:13-cv-00083-SKO; 1:13-cv-00111-SKO, 2015 WL 4598861, at *19 n.29 (E.D. Cal. July 29, 2015) (whether plaintiff was intoxicated and on pain medication affects credibility of statements, not their admissibility as made by one without personal knowledge about the matter); United States v. White, 2013 WL 1404877, at *4 (S.D.W. Va. Apr. 5, 2013) ("[E]vidence of a

witness's drug use is admissible to attack her credibility where it evinces an impairment of the witness's capacity to observe or ability to recall at the time of a particular event or at the time of trial."), rev'd on other grounds, Kinder v. White, 609 Fed. App'x 126 (4th Cir. 2015); Harris v. Clark, No. 06-C-529, 2009 WL 1683233, at *2 (E.D. Wis. June 16, 2009) (whether plaintiff was intoxicated relevant to evaluate his accuracy of perception and memory of events surrounding incident).

The court generally does not make credibility determinations when ruling on a motion for summary judgment. See Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). However, "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff' . . . without making some assessment of the plaintiff's account." Id. (internal citation omitted). Even where the court undertakes a credibility assessment at the summary judgment stage, "the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." Id.

In Burks v. Perrotta, No. 13-CV-5879(ER), 2015 WL 2340641 (S.D.N.Y. May 15, 2015), the plaintiff offered several explanations for a head wound. Id. at *5. The defendant police officers urged the district court to find that plaintiff's accounts were disproved by the record. The district court rejected that argument because there was a plausible explanation for the inconsistencies in plaintiff's accounts and also noted that, even if the plaintiff were not credible regarding who caused his head injury, a question

of fact remained regarding other force used in the course of the plaintiff's arrest. Id. at *6.

While it is true that Fennelly has no evidence, other than his own statement, regarding where the use of force occurred, Sharoh does not contest the fact that he struck Fennelly in the face several times with his fist. See L.R. 56(a)1 ¶ 45. Fennelly's claim is that Sharoh used excessive force. The fact that the force appears to have been used in the hospital emergency room, rather than the Pub parking lot, does not alter the fact that Fennelly is claiming that Sharoh used more force than necessary. As a jury still could find that Sharoh used more force than required to subdue Fennelly, summary judgment is not warranted on this claim.

## IV. CONCLUSION

Sharoh's Motion for Summary Judgment (**Doc. No. 28**) is **GRANTED** as to the Eighth Amendment claims and **DENIED** in all other respects.

**SO ORDERED.**

Dated at New Haven, Connecticut this 19th day of March 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge